**Electronically Filed
Intermediate Court of Appeals
29124
18-JAN-2013
07:56 AM**

NO. 29124

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


GREGORY SCOTT JARRELL, Plaintiff-Appellee, v.
CYNTHIA MARIE JARRELL, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 04-1-3259)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Reifurth and Ginoza, JJ.)

Defendant-Appellant Cynthia Marie Jarrell ("Cynthia") appeals from the Order Granting in Part and Denying in Part Defendant's Motions Filed 10/3/07 and 12/4/07 and Plaintiff's Motion Filed 11/16/07 filed on March 25, 2008, in the Family Court of the First Circuit ("Family Court").[1]

Cynthia and Plaintiff-Appellee Gregory Scott Jarrell ("Gregory") had two children during their marriage, Daughter and Son. On November 14, 2005, the Family Court entered the Decree Granting Divorce and Awarding Child Custody ("Divorce Decree"), which mandated, among other things, that Gregory pay (1) $3,000 per month to Cynthia as alimony for a period of 5 years; (2) $1,120 per month per child in child support; and (3) 65.4% of the children's educational expenses as "higher-educational support," with Cynthia paying 34.6%, while the children were full-time students and under the age of twenty-three. Two separate paragraphs in the Divorce Decree, Paragraphs 4.3.3 and 4.4.2, governed educational support responsibilities for the children. Both paragraphs included a provision stating that should Gregory's child-support obligations exceed his educational

---

[1]     Judge Karen M. Radius presided.

support obligations, the excess would be deemed a gift to the child ("excess/gift provision").

Cynthia timely moved for reconsideration of the Divorce Decree ("Motion for Reconsideration"), challenging various provisions, including some of those in Paragraphs 4.3.3 and 4.4.2. Cynthia did not, however, object to either of the excess/gift provisions. The Family Court granted the Motion for Reconsideration in part ("Reconsideration Order"), deleting a portion of Paragraph 4.3.3 (but leaving the excess/gift provision intact) and Paragraph 4.4.2 in its entirety (including the excess/gift provision pertaining to Daughter). Neither party appealed from the Divorce Decree or the Reconsideration Order.

In 2007, Cynthia and Gregory each filed motions for post-decree relief. Following a trial on the post-decree motions, the Family Court entered the Order Granting in Part and Denying in Part Defendant's Motions Filed 10/3/07 and 12/4/07 and Plaintiff's Motion Filed 11/16/07 from which the instant appeal lies.

Cynthia raises twenty-two points of error, which we condense into five general points of error. Cynthia argues that (1) the Family Court mistakenly interpreted the Divorce Decree as requiring Gregory to pay either child support *or* educational support for his children while they attended college rather than both child support *and* educational support, and that, as a result, the Family Court's conclusion that Gregory had satisfied his educational and child-support obligations was erroneous. Cynthia also argues that the Family Court erred (2) in concluding that Gregory's prospective child support and educational support were not cumulative obligations; (3) in holding that Cynthia owed Gregory $6,549.12, which represented her educational support obligation to Daughter in 2005–2006; (4) in concluding that Cynthia failed to prove the existence of a material change of circumstances justifying a downward adjustment of her imputed income for child-support and spousal-support purposes because certain findings of fact are clearly erroneous; and (5) by denying Cynthia an increase or extension of alimony payments.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Cynthia's points of error as follows:

(1) The Divorce Decree initially contained excess/gift provisions specific to both Daughter and Son. Analyzing the Divorce Decree as it existed before the Reconsideration Order's alterations, Gregory's child-support and educational support obligations were clearly linked. Should Gregory's child-support obligations exceed his educational support obligations for either child, the "excess" would be treated as a "gift" to that child. That is, should the child's educational expenses be less than $1,120 per month, $1,120 per month would satisfy both Gregory's child-support and educational support obligations. Implicit in this is that should 65.4% of either child's educational needs exceed $1,120 per month, Gregory would pay only educational support, not both educational and child support.[2]

In the Motion for Reconsideration, Cynthia did not challenge the excess/gift provisions in Paragraphs 4.3.3 or 4.4.2. The Family Court granted the Motion for Reconsideration as to Paragraphs 4.3.3 and 4.4.2., keeping the excess/gift provision as it pertained to Son, but deleting it as to Daughter. As a result, the sentence in Paragraph 4.3.3 – "If [Gregory's] annual child support obligation exceeds his obligated educational costs, any excess shall be deemed a gift to the child to cover incidental expenses" – was never deleted.

The Divorce Decree was poorly drafted. The Family Court further complicated the issue by deleting the excess/gift provision in Paragraph 4.4.2. despite not being asked to do so.

---

[2] This interpretation is supported by some of the provisions in the Divorce Decree. Paragraphs 4.3.1 and 4.4.1 provide for Gregory to pay "child support" to either Son's or Daughter's university and/or the child directly should the child go to college and not live with Cynthia during that time. There is no apparent reason for "child support" to be payable to the child's university unless it is related to the child's education. Furthermore, when the child is "not living principally with one or the other of the parties" while in college, educational support expenses include "room and board, transportation to and from school, and a reasonable allowance for the child's incidental expenses." Similar expenses for Son while attending high school—books, transportation costs, field trips, etc.—were to be paid out of Gregory's child-support payments for Son.

3

However, given that Cynthia never objected to the excess/gift provisions in her Motion for Reconsideration,[3] we conclude that the Family Court (and the parties) understood and intended that Gregory would not be required to pay *both* educational and child support for those children who were attending college as full-time students.[4] *Nakata v. Nakata*, 3 Haw. App. 51, 55, 641 P.2d 333, 335 (1982) ("When interpreting a decree, the determinative factor is the intention of the court as gathered from all parts of the decree itself.").

Cynthia fails to show that Gregory was in arrears on his child-support or educational support obligations. The Family Court found that while Daughter was attending Santa Clara University her educational costs were $18,849.00 per year and that Son's educational costs at Western Washington University were $11,829.00 per year. Gregory was obligated to pay Daughter and Son (and/or their respective colleges) either 65.4% of the child's educational costs or $1,120 per month, whichever amounted to the larger sum. Twelve months multiplied by $1,120 equals $13,440 per year per child. In comparison, Daughter's and Son's educational expenses, multiplied by 65.4%, are $12,327.25 and $7,736.17 per year, respectively. Thus, for each child, Gregory was obligated to pay at least $13,440 per year in child/educational support.

The Family Court found that Gregory paid $23,040.63 to Daughter between September 1, 2005 through August 2006,

---

[3] Cynthia maintains that the Divorce Decree was drafted by Gregory's attorney who, she apparently argues, inserted provisions foreign to an oral decision rendered by the Family Court at a hearing on August 30, 2005. Even if this were true, Cynthia moved for the amendment of the Divorce Decree in numerous respects, but failed to object to the provisions conflating Gregory's child-support and educational obligations. Cynthia also failed to appeal. As a result, Cynthia waived the argument that the excess/gift provisions were improperly inserted into the Divorce Decree and cannot raise it now in post-decree proceedings years after the time for appeal has passed. *See Citicorp Mortgage, Inc. v. Bartolome*, 94 Hawai'i 422, 436, 16 P.3d 827, 841 (App. 2000) (noting that Rule 60(b) motions cannot remedy a failure to appeal).

[4] Cynthia argues that this interpretation of the Divorce Decree is "at variance with governing precedent" and "runs counter to standard practice." However, whether the Divorce Decree was in conformance with "governing precedent" or "standard practice" were issues that should have been addressed on direct appeal from the Divorce Decree. Cynthia lost her opportunity to challenge the Divorce Decree when she failed to appeal from it. *See Bartolome*, 94 Hawai'i at 436, 16 P.3d at 841.

$15,415.70 for the 2006-2007 school year, and $6,163.43 for the fall semester of 2007. The Family Court also found that Gregory paid $15,415.70 between September 2006 through August 2007 to Son and $4,487.63 for a portion of the fall semester. Those sums, paid over a full year, exceed $13,440.00.[5] Thus, Gregory was not in arrears on his child-support payments, and the Family Court did not err.

(2) Cynthia failed to present an argument in support of her second point of error. Thus, it is waived. Haw. R. App. P. 28(b)(7).[6]

(3) Cynthia argues that if, as Gregory contends, "his 65.4% share of the children's higher educational support was included as part of his child support obligation of $1,120 per month per child, pursuant to paragraph 4.1 and 4.2 of the *Divorce Decree*, then logically [Cynthia's] obligation for the children's higher educational support, pursuant to the same paragraphs, would also have been included in her child support obligation of 'not more than $50 per month per child.'" However, Gregory was only required to pay either $1,120 in child support per child per month or 65.4% of the child's total educational monetary need, whichever was the greater amount. Under this interpretation, it does not follow that Cynthia would only be obligated to pay $50 in child support if 34.6% of the child's educational financial need was greater than $50. The argument is without merit. As

---

[5]    Cynthia argues that Gregory parceled out payments to the children and made purchases in lieu of support payments, which should not have counted toward the satisfaction of his obligations under the Divorce Decree. Argument in an opening brief, however, must include "the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes *and parts of the record relied on*." Haw. R. App. P. 28(b)(7) (emphasis added). The only part of the record that Cynthia cites to in support of her arguments that the Family Court improperly credited Gregory for certain payments is Plaintiff's Exhibit 2, a ledger recording payments to Daughter and Son over several years. The description of the payments in Plaintiff's Exhibit 2 are generally no more than a few words—for instance, "Public Storage - for kids" or "Costco - Glasses." The exhibit is not self-explanatory, and Cynthia fails to cite any record evidence demonstrating the exhibit's import or application to this case. Cynthia's unsupported arguments describing Gregory's allegedly defective method of satisfying his obligations under the Divorce Decree are devoid of value. Thus, the argument is deemed waived. Haw. R. App. P. 28(b)(7).

[6]    To the extent that Cynthia may have addressed this point of error tangentially in her general argument on the issue of child support, Cynthia fails to show error for the reasons set forth *supra*.

such, there is no demonstration that the Family Court erred in holding that Cynthia owed Gregory $6,549.12, which represented her educational support obligation to Daughter in 2005-2006.

(4) A party receiving spousal support "is always under a duty to exert reasonable efforts to attain self-sufficiency at the standard of living established during the marriage and will not be allowed to benefit from the consequences of a violation of that duty." *Saromines v. Saromines*, 3 Haw. App. 20, 28, 641 P.2d 1342, 1348 (1982). The Family Court found that Cynthia (a) made no efforts after the divorce to maximize her earnings at Cinderella beauty salon, the business that she owns, as she typically scheduled appointments with her clients for only a few hours a day, four days a week, and (b) made no efforts to seek better employment. Cynthia claims that these findings are clearly erroneous.

a. Work at Cinderella

The Family Court found that Cynthia's "scheduled appointments with clients typically are for a short number of hours, four days per week" and that she "had made no efforts in the two years post-divorce to . . . maximize her potential with the Cinderella shop." The Family Court stated that Cynthia's justification for working reduced hours was that she wanted to care for her mother who is in an assisted-living facility. The Family Court concluded that Cynthia's desire to care for her mother did not constitute a material change in circumstances for the purposes of any change in alimony.

The Family Court's finding that Cynthia's "scheduled appointments" were only "for a short number of hours, four days per week" is not clearly erroneous. Plaintiff's Exhibit 11 consists of both monthly calendars, which apparently indicate the days Cynthia took appointments, and daily schedules, which indicate when Cynthia had scheduled appointments and with whom. Cynthia states that these were calendars "that Cynthia and the other cosmetologists used to keep track of their appointments." As Cynthia notes, the work calendar "showed that Cynthia scheduled appointments for herself on an average of about three days per each five-day work week." Cynthia's description of her

work schedule is wholly consistent with the Family Court's finding that Cynthia only scheduled appointments four days a week. The finding is not clearly erroneous.

Cynthia's argument, then, is that her scheduled hours do not support the Family Court's finding that she "work[ed] reduced hours" and "made no effort" to maximize her potential earnings at Cinderella. Cynthia argues that the work calendar did not reflect other things she did at the shop—like answering telephones, talking to customers, and bookkeeping.

The Family Court's findings are not, however, clearly erroneous. Cynthia did not show how she did anything more at Cinderella than what she had been doing at the time of divorce to earn additional income.[2/] Although she may have been performing tasks at Cinderella in addition to her scheduled appointments, when the other salon employees—independent contractors—took an appointment, Cinderella would pay them a 50% commission. Thus, by only taking appointments on a limited basis, the Family Court apparently found that Cynthia was not doing enough to justify decreasing her imputed income. It cannot be said that this is clearly erroneous.

Cynthia argues that the evidence "did not establish that she cut her hours to care for her aged mother . . . ." The Family Court did not find that she worked reduced hours because of her mother; instead, the Family Court stated that it was Cynthia's stated justification for not working longer hours. The Family Court's finding that Cynthia was not making efforts to maximize her income was based on evidence that she was, in fact, not making those efforts.

Therefore, the Family Court's findings that Cynthia did not make efforts to maximize her income at Cinderella and only took appointments on a part-time basis are not clearly erroneous.

b. Efforts to get new employment

The Family Court found that Cynthia "had made no

---

[2/] Cynthia points to testimony where she said: "I have my business, and I tried to expand upon that, and I did somewhat." Cynthia did not, however, elaborate upon what this expansion consisted of at all, as her attorney changed the subject immediately. This vague statement, offered without any context, is insufficient to undermine any of the Family Court's findings of fact.

efforts in the two-years post-divorce to seek better employment . . . ." Cynthia argues that her testimony established, "without contradiction, that she did reasonably explore work opportunities other than the continued operation of [Cinderella]."

Cynthia testified that she "looked into getting back into the court reporting field," but claimed that she would have needed to get recertified and could not have done so locally. She also testified that she "looked into" going into "medical transcriptioning," but claimed that those jobs were being outsourced to foreign countries. Cynthia testified that she "talked with somebody down at the health department", but that her age was "working against [her]." Finally, she testified that she "was just . . . perusing other totally different job opportunities," but claimed that she was hampered by her lack of education.

Cynthia fails to establish that the Family Court's finding that Cynthia put no effort into obtaining better employment was clearly erroneous. The evidence presented does not establish, as Cynthia contends, that she reasonably explored better work opportunities. The most her testimony shows is that she looked into, perused, or spoke to someone about different job opportunities; her testimony does not indicate that she took any meaningful steps toward getting a better job.

The Family Court's finding of fact is quite reasonably read as an interpretation of the evidence that was presented. A trial judge is only required to make "brief, definite and pertinent findings, not elaborate findings nor negative findings of fact." *Doe v. Roe*, 5 Haw. App. 558, 565-66, 705 P.2d 535, 542-43 (1985). A trial court "is not required to make findings of fact on all the evidence presented, nor state every option it considered." *In re J.A.A.*, 623 S.E.2d 45, 75 (N.C. Ct. App. 2005). Simply because a trial judge did not mention something "does not mean [s]he did not consider it." *Id.*

Just because Cynthia's testimony was "without contradiction" does not mean that the Family Court needed to afford it any significance. *See Fisher v. Fisher*, 111 Hawai'i

41, 46, 137 P.3d 355, 360 (2006) (weight of the evidence is a determination made by the trier of fact). Nor does it mean that the Family Court, by not acknowledging the testimony explicitly in its findings of fact, failed to consider it. While Cynthia argues that the Family Court's finding of fact is clearly erroneous because she testified that she made *some*, rather than *no*, effort toward finding a new job (that is, she at least thought about it to some extent), the import of Cynthia's testimony is patently weak. The finding just as easily indicates that the Family Court, reasonably interpreting Cynthia's testimony, found that Cynthia failed to make any *meaningful* effort toward finding new work. Cynthia has not shown that the finding of fact was clearly erroneous.[8]

Therefore, the Family Court did not err in concluding that Cynthia failed to establish a material change in circumstances justifying a decrease in her imputed income.

(5) Cynthia contends that the Family Court erred by denying Cynthia a modification of the alimony set forth in the Divorce Decree because the federal mandatory retirement age for airline pilots was increased from 60 to 65, and Gregory's monthly income increased from $14,100 per month to $16,455 per month.

A family court's denial of a modification based on a material change in circumstances is reviewed for "manifest abuse of wide discretion." *See Davis v. Davis*, 3 Haw. App. 501, 506, 653 P.2d 1167, 1171 (1982). Here, the Family Court held that Cynthia "failed to meet her burden of proof as to the existence of a material change of circumstances justifying a modification of spousal support with respect to either the amount of periodic

---

[8] Even if the Family Court's finding here was clearly erroneous, the error would be harmless and any prejudice to Cynthia would be *de minimis*. HAW. REV. STAT. § 641-2 (Supp. 2011). Even if she could not get a better job, the Family Court found that Cynthia did not put effort into increasing her income from the job she already had as the owner and operator of Cinderella. That is, the Family Court found that Cynthia had two viable paths to increasing her income and she did not try to take either of them. Cynthia's failure to put sufficient effort into increasing her income from Cinderella was, for all intents and purposes, the reason why the Family Court did not impute to her a lower monthly income; thus, any error in finding that Cynthia made "no efforts" in seeking better employment is harmless. *Cf. United States v. Cavera*, 550 F.3d 180, 197 (2d Cir. 2008) (holding that potential error is necessarily harmless "in light of the alternative independent ground" for the decision).

spousal support payable to her, or as to the duration of spousal support."

The Family Court did not abuse its discretion.  Nothing indicates that the Family Court ever intended to correlate Cynthia's receipt of spousal support to the mandatory retirement age set by the Federal Aviation Administration ("FAA").  At the time of divorce, Gregory was 52 years old and, under the FAA's age regulations, would have been required to retire at a time somewhere between seven and eight years later.  However, the Family Court ordered alimony of $3,000.00 per month to be paid for only five years.  In the oral decision, the Family Court specifically set the term of alimony at five years because of "the length of the marriage, and quite frankly in five years the last child will be out of college with any luck."  Therefore, the FAA's decision to increase the mandatory retirement age for pilots is an immaterial change of circumstances; in any event, Cynthia has not shown an abuse of discretion.

Cynthia further states that "[t]he record does not establish if Cynthia had the option of receiving her share of Greg[ory]'s retirement benefits prior to the actual date of his retirement."  Cynthia then states how her economic situation hypothetically could be affected based on whether she could or could not receive retirement benefits prior to Gregory's retirement.  As Cynthia admits that she did not establish whether or not she could have received such benefits prior to Gregory's retirement, the Family Court had no basis for rendering any findings or conclusions on this point and did not err by failing to do so.

Finally, Cynthia argues that the Family Court erred by not considering a $2,355 increase in Gregory's monthly income to be a material change of circumstances justifying a modification of spousal support.  The family court, sitting in equity, "for good cause shown may amend or revise any order and shall consider all proper circumstances in determining the amount of the allowance, if any, which shall thereafter be ordered."  HAW. REV. STAT. § 580-47(d) (2006).  Here, after considering numerous factors,  the Family Court held that Cynthia failed to meet her

burden of proof. Cynthia cites to no authority stating that an increase in one party's income, standing alone, entitles the other to an adjustment in alimony. Cynthia has failed to show an abuse of discretion.

Therefore, IT IS HEREBY ORDERED that the Family Court's March 25, 2008 Order Granting in Part and Denying in Part Defendant's Motions Filed 10/3/07 and 12/4/07 and Plaintiff's Motion Filed 11/16/07 is affirmed.

DATED: Honolulu, Hawai'i, January 18, 2013.

On the briefs:

Robert M. Harris
for Defendant-Appellant

Huilin Dong
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

11